**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 16-23377-CIV-**
**ALTONAGA/O'Sullivan**

RUBIN MCFADDEN p/k/a KHAOTIC,
and NINA ALIMPIC,

     Plaintiff,

v.

LEE Q. ODENAT a/k/a "Q," individually,
QWORLDSTAR, INC., a Delaware
Corporation,

     Defendants.
_____/

## SPECIALLY APPEARING DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) and 12(b)(6) and INCORPORATED MEMORANDUM OF LAW

  Specially appearing Defendants Lee "Q" O'Denat ("O'Denat") and QWorldstar, Inc. ("QWorldstar"), a Delaware corporation (collectively, "Defendants"), hereby file this Motion to Dismiss the First Amended Complaint ("FAC") of Plaintiffs Ruben McFadden p/k/a Khaotic and Nina Alimpic ("Plaintiffs"), pursuant to Fed. R. Civ. P. 12(b)(2) and (6), Fla. Stat. § 48.193(1) and Rule 7.1 of the Southern District of Florida, with supporting memorandum of law.  As set forth below in the supporting memorandum of law, this Court lacks personal jurisdiction over all Defendants and as such all claims against Defendants should be dismissed for lack of personal jurisdiction.

  Even if the Court finds there are sufficient jurisdictional allegations and Plaintiffs can somehow overcome Defendants' due process challenges, Plaintiffs' claims should also be dismissed because (1) Plaintiffs are public figures and the FAC contains no allegations of actual malice by Defendants; (2) the publication of and comment about the Video is protected by the First Amendment because, under applicable law, it is a matter of public concern; (3) Plaintiffs' common law claims are duplicative of one another; and (4) Plaintiff's statutory claim for violation of Fla. Stat. § 934.01 lacks sufficient factual allegations.

<u>**MEMORANDUM OF LAW**</u>

**I.      THE FIRST AMENDED COMPLAINT MUST BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(2)**

Fed. R. Civ. P. 12(b)(2) allows a defendant to bring a motion to dismiss for lack of personal jurisdiction.  Once the defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the defendant.  *Musiker v. Projectavision, Inc*., 960 F.Supp. 292, 294-295 (S.D. Fla. 1997).  The power of a federal court to exercise personal jurisdiction over a nonresident defendant of the forum state turns on the two-part analysis set forth in *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla.1989).  **<u>First</u>**, there must be sufficient facts to bring the action within the reach of the long-arm statute. If the statute applies, the **<u>next</u>** inquiry is whether there are sufficient "minimum contacts" to satisfy due process requirements. "Both parts must be satisfied for a court to exercise personal jurisdiction over a nonresident defendant." *Am. Fin. Trading Corp. v. Bauer*, 828 So.2d 1071, 1074 (Fla. 4th DCA 2002).

Here, this Court may not properly exercise personal jurisdiction over non-resident Defendants O'Denat and QWorldstar because the exercise of personal jurisdiction is not proper under Florida's Long-Arm Statute (Fla. Stat. § 48.193) and Defendants, each non-residents of the State of Florida, lack sufficient minimum contacts such that the exercise of personal jurisdiction over these defendants would violate constitutional due process guarantees.

In their First Amended Complaint ("FAC"), Plaintiffs allege in conclusory fashion, without any specific factual allegation, that Defendants are subject to the jurisdiction of this Court because they each allegedly "(a) [] conduct business in Florida; (b) [] committed tortious acts within the State of Florida, thereby satisfying the Florida long-arm statute § 48.193 Fla. Stat. (2016); and (c) [] have committed intentional torts expressly aimed at McFadden and Alimpic, broadcast into the State of Florida as contemplated by § 770.05 Fla. Stat (2016) . . . ."

While Plaintiffs have attempted to track portions of Florida's Long-Arm Statute in the FAC's conclusory jurisdictional allegations, the FAC fails to allege facts sufficient to warrant the exercise of personal jurisdiction over Defendants.  Simply stated, the allegations in the FAC are insufficient to confer personal jurisdiction over the Defendants because none of the Defendants have any connection to the State of Florida.  Moreover, these allegations ignore the fact that the exercise of personal jurisdiction is prohibited by the Due Process Clause of the United States

Constitution.  As such, Plaintiffs have failed to meet their burden of alleging a cognizable basis for the exercise of this Court's personal jurisdiction over the Defendants.

Under Florida law, Plaintiffs bear the burden of proving personal jurisdiction. *Meterlogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d 1346, 1352 (S.D.Fla. 2000), citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996).  Plaintiffs' "burden in alleging personal jurisdiction is to set forth sufficient material facts to establish [a] basis for exercise of such jurisdiction." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000).  The FAC fails to set forth sufficient material facts to establish a basis for the exercise of personal jurisdiction under the well-established precedent of this Court.

The Court must conduct a two-part analysis in evaluating the sufficiency of the facts set forth by Plaintiffs in their attempt to show this Court has personal jurisdiction.  **First**, the plaintiff must show that the nonresident defendant has purposefully established "minimum contacts" with Florida. *International Shoe Co. v. Washington*, 326 U.S. 310, 366 (1945); *Asahi Metal Indus Co. v. Sup.Ct. of California*, 480 U.S. 102, 105 (1987); *Future Tech. Today, Inc.*, 218 F.3d at 1249.  That is, this Court must consider whether the Florida Long-Arm Statute provides a statutory basis for jurisdiction. *Cable/Home Communications Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990).  The Supreme Court of the United States has long recognized that an essential goal of the minimum contacts test is to protect the nonresident defendant. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). This goal requires this Court to determine whether the nonresident defendant has purposely availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 474 (1985).

The "minimum contacts" aspect of due process can be satisfied by either finding general jurisdiction or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984), *World-Wide Volkswagen*, 444 U.S. at 293-94.  Fla. Stat. § 48.193(1) of the Florida Statutes sets forth the possible bases for the assertion of ***specific*** jurisdiction over a non-resident defendant, while Fla. Stat. § 48.193(2) provides the foundation for the assertion of ***general*** jurisdiction.[1]

---

[1] Specific jurisdiction exists when a defendant's contacts with the forum state are directly related to the causes of action asserted, whereas general jurisdiction exists when a defendant's contacts are so systematic within the forum that the claim asserted need not be related to the defendant's contacts with the forum state. *Madara v. Hall,* 916 F.2d 1510, 1516 n. 7 (11th Cir. 1990).

**Second**, this Court must consider and must determine separately whether Plaintiffs showed that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" *e.g*., that it does not violate the due process clause of the Fourteenth Amendment and related precedent. *International Shoe*, 326 U.S. at 316; *Cable/Home*, 902 F.2d at 855; *Future Technology*, *supra*, citing *Sculptchair*, 94 F.3d at 626.

Here, Plaintiffs' allegations satisfy neither Florida's Long-Arm Statute nor the applicable Constitutional requirements. The facts alleged in the FAC are wholly deficient when measured against the requirements of the Florida Long-Arm Statute and the Due Process Clause. Consequently, this action must be dismissed for lack of personal jurisdiction. *Madara,* 916 F.2d at 1514.

### A. The Court Lacks Any Basis to Exercise Specific Jurisdiction Over Defendants Pursuant to Florida Statute § 48.193(1)

When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship among the defendant, the forum, and the litigation. *Helicopteros*, 466 U.S. at 414. Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, a plaintiff must meet the "fair warning" requirement by establishing the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thereby "invoking the benefits and protection of its laws," and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Burger King*, 471 U.S. at 472-74 (citations omitted). Isolated contacts by a nonresident defendant with the forum state or its residents are not sufficient for a court to assume personal jurisdiction over that nonresident defendant. *Id.* at 475 n. 18. Ultimately, the defendant's connection with the forum state must be of such a nature that the defendant should reasonably anticipate being haled into court in that state. *Id.*

Thus, in order for this Court to exercise specific personal jurisdiction over Defendants pursuant to Florida's Long-Arm Statute, Plaintiffs must assert facts to support the exercise of jurisdiction under one of the categories set forth in Fla. Stat. § 48.193(1). *Future Tech. Today, Inc.*, 218 F.3d at 1249.

Plaintiffs fail to invoke any specific provision of Section 48.193(1) of their FAC. However, based on the conclusory allegations of the FAC, there are only three conceivable subsections of Section 48.193(1) that Plaintiffs may attempt to rely on to establish specific

personal jurisdiction: Section 48.193(1)(a)(1), (2), and (6).  None of these provides any basis for the assertion of personal jurisdiction over Defendants because all of Plaintiffs' jurisdictional allegations are merely conclusory statements and the few allegations that attempt to invoke facts are not a sufficient basis for the exercise of personal jurisdiction.  Florida's Long-Arm Statute, Fla. Stat § 48.193, provides in relevant part that:

> (1) (a) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> (1) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> (2) Committing a tortious act within this state.
>
> . . .
>
> (6) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
>
> > (a) The defendant was engaged in solicitation or service activities within this state; or
> >
> > (b) Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

Fla. Stat § 48.193(1)(a)(1), (2), and (6).

The plain facts surrounding the Defendants and their business clearly establish that this Court does not have personal jurisdiction over the Defendants under any of these bases.

## 1. This Court Does Not have Jurisdiction Over <u>O'Denat</u> Under Fla. Stat. § 48.193(1)(a)(1), (2) or (6)

There must be some degree of predictability "that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World–Wide Volkswagen*, 444 U.S. at 297.  Defendant O'Denat does not reside in the State of Florida, does not own real estate, does not have bank accounts, and has never had any investment in any Florida businesses.  *See* Affidavit of O'Denat ("O'Denat Aff.") ¶¶ 5-8.  Accordingly, he cannot be haled into court here under any possible reading of Fla. Stat. § 48.193(1).

There are no facts alleged in the FAC that indicate O'Denat was ever personally involved with the alleged posting of the Video, much less with www.worldstarhiphop.com.  There are no allegations in the FAC that he was personally present in Florida, carried on a business in Florida, or had an office in Florida.

The FAC is entirely factually deficient, with absolutely nothing to indicate why Defendant O'Denat, ***personally***, should be held responsible for the alleged posting of the Video to the www.worldstarhiphop.com website, which is operated by QWorldstar.  O'Denat has declared that he never contracted with an ISP, and never targeted Florida individuals or customers in connection with www.worldstarhiphop.com.  *See* O'Denat Aff., attached as Ex. A, ¶¶ 9-10.

Even if the FAC did allege that O'Denat, ***personally***, operated the www.worldstarhiphop.com website, this would still be insufficient to support personal jurisdiction.  The allegation that the mere operation of Defendants' alleged Internet website, or anything "published" or "broadcast" on that website, somehow confers personal jurisdiction over Defendants, is wrong and this very argument was rejected by another Florida federal court.  In *Miller v. Berman*, 289 F.Supp.2d 1327 (M.D. Fla. 2003), the Middle District held that similar allegations against a website operator were insufficient to confer personal jurisdiction under Florida's Long-Arm Statute.

In *Miller*, the plaintiff alleged that the defendants were liable for negligent misrepresentation, breach of warranty, and false advertising.  *Id*. at 1239.  In that case, Berman was president of TMC Corporation which operated as a broker of new and used catamarans.  *Id.* TMC advertised its services and yachts in magazines and on its website that it maintained in Philadelphia.  *Id.*  Plaintiff, a Florida resident, saw an ad for a used F-41 Cougar Marine Catamaran on the website and contacted the defendant via an email, expressing his interest in the catamaran.  *Id.*  Subsequent emails and telephone calls ensued between the plaintiff in Florida and the defendant.  *Id.*  These contacts culminated in defendant ultimately determining that the F-41 was not an appropriate vessel for the plaintiff, and therefore, defendant referred plaintiff to a catamaran builder in South Africa.  *Id.* at 1329-1330.

The Middle District of Florida held in *Miller* that the defendants could not be subject to personal jurisdiction in Florida under Fla. Stat. § 48.193(1)(a) because defendants "did not operate, conduct, engage in, or carry on a business or business venture in the State of Florida."

*Id.* at 1332.   The Court rejected the argument that the website and web-based advertising constituted transacting business in Florida.   Moreover, the court distinguished the case of *Obermaier v. Kenneth Copeland Evangelistic Assoc., Inc.*, 208 F. Supp.2d 1288, 1291 (M.D. Fla. 2002), where the court had found jurisdiction over a website operator, on the basis that in *Obermaier*, the website was used to solicit money in the form of contributions from Florida residents.   *Id*.

While the FAC alleges that "Defendants" operate the offending website, Defendant O'Denat is a California resident who does not have any investments in Florida businesses or owned or leased any real estate in the State. *See* O'Denat Aff. at ¶ 8.   There are no facts that would indicate how O'Denat, as an individual, has sufficient connection to the State of Florida. There are no facts to indicate how O'Denat personally participated in the posting of the Video, or personally defamed or violated the privacy rights, of either Plaintiff.   The exercise of jurisdiction over O'Denat would be unfair under the circumstances.

## 2.  This Court Does Not have Jurisdiction Over <u>QWorldstar</u> Under Fla. Stat. § 48.193(1)(a)(1), (2) or (6)

Similarly, QWorldstar, Inc. is not subject to jurisdiction in Florida under any of the possible bases for jurisdiction.

### a.  There Are No Facts to Indicate That QWorldstar Operates Its Business in Florida (§ 48.193(1)(a)(1))

Defendant QWorldstar is a Delaware corporation with its headquarters and place of business in California.   It does not, and has never had, an office or agency in Florida.   *See* O'Denat Aff. at ¶ 13.   It is not registered to do business in Florida, or maintain a business in Florida.   *Id*.  It has no investments in Florida businesses.   *Id*.  It has never contracted with any Florida ISPs, or distinguished or targeted Florida customers on its website, www.worldstarhiphop.com.  *Id*. at ¶¶ 14-15.  The mere maintenance of a website accessible from Florida, without more, cannot possibly confer jurisdiction on Defendant QWorldstar (or, as described above, O'Denat).   *See Miller*, 289 F.Supp.2d at 1332.   As such, Fla. Stat. § 48.193(1)(a)(1) does not confer personal jurisdiction over the Defendants.

### b. The *Calder* "Effects" Test Does Not Support Exercise of Jurisdiction Over QWorldstar

Nor has QWorldstar committed a tort or otherwise expressly aimed any tortious activity at the state of Florida, required for jurisdiction under Flat. Stat. § 48.193(1)(a)(2) or (6).

When, as in this case, intentional torts are alleged, "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden v. Fiore*, 571 U.S. –, 134 S.Ct. 1115, 1123 (2014). In *Walden,* 134 S. Ct. at 1125, the Supreme Court clarified that for jurisdictional analysis, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."

This means that the Court needs to evaluate the "'*effects*' of [Defendants' California] conduct in [Florida]." *Calder v. Jones*, 465 U.S. 783, 789 (1984) (emphasis added). In *Calder*, a Florida reporter and publisher expressly aimed their conduct at a California resident by making the State the focal point of the story, and published it in a state where the paper (the National Enquirer) had its largest circulation.

Courts in other jurisdictions, which have considered *Calder* and the "effects test" in defamation actions arising out of Internet posts and advertising, have held the "mere posting of information or advertisements on an Internet website does not confer nationwide personal jurisdiction." *Remick v. Manfredy*, 238 F.3d 248, 259, fn. 3 (3d Cir.2001). For example, in *Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir.2002), the court explained: "When the Internet activity is, as here, the posting of news articles on a website . . . [w]e . . . ask whether the newspapers manifested an intent to direct their website content – which included certain articles discussing conditions in a [forum state] prison – to a [forum state] audience. As we recognized in *ALS Scan* [*, Inc. v. Digital Service Consultants* (4th Cir.2002) 293 F.3d 707], 'a person's act of placing information on the Internet' is not sufficient by itself to 'subject[ ] that person to personal jurisdiction in each State in which the information is accessed.' [Citation.] Otherwise, a 'person placing information on the Internet would be subject to personal jurisdiction in every State,' and the traditional due process principles governing a State's jurisdiction over persons outside of its borders would be subverted."

In a defamation action in which an allegedly defamatory article was posted on an online bulletin board, the Fifth Circuit held that the *Calder* effects test was not met because the article did not target readers in the forum state and the forum state was not the "focal point of the article or harm suffered."  *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002).  In an unreported opinion, a court in the Middle District of Florida adopted this reasoning of *Revell* and noted that another court in the Eleventh Circuit did as well, in *JB Oxford Holdings, Inc. v. Net Trade, Inc*., 76 F.Supp.2d 1363, 1367-68 (S.D.Fla. 1999).  *See Full Sail, Inc. v. Spevack*, No. 6:03-cv-887-31JGG, 2003 WL 25277185, at \*6 (M.D. Fla. Oct. 21, 2003) ("This [c]ourt agrees with *Revell* and *JB Oxford Holdings* to the extent that a site satisfies the *Calder* effects test only if the site targets readers of the forum state.")

Defendant QWorldstar and its website www.worldstarhiphop.com do not have any meaningful connection to Florida, and there are no facts to indicate otherwise. Nor are there any facts to indicate that QWorldstar targeted Plaintiffs or the State of Florida specifically. Jurisdiction cannot be sustained under the circumstances.

### c.   The "Sliding Scale Approach" of *Zippo Manufacturing* Does Not Support the Exercise of Jurisdiction Over QWorldstar

Many cases involving website defendants have analyzed the precise nature of the defendant's website business to determine whether or not jurisdiction should be permitted.  For example, in *Miller*, the Middle District applied the "sliding scale approach" first enunciated by *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp.1119 (W.D. Pa. 1997).  The *Zippo* sliding scale analysis consist of three levels: (1) where the defendant conducts business over the Internet through its active website; (2) where the defendant maintains an interactive website; and (3) where the defendant maintains a passive website.  *Id.*  The **first category** [Level 1] consists of situations where a defendant clearly does business over the internet and personal jurisdiction is proper.  *Id.*  Websites in this category are interactive and allow for a transaction between the user and the website owner.  *Id.*  The **second category** [Level 2] is occupied by interactive websites where a user can exchange information with the host computer and personal jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the website.  *Id.*  The **final category** [Level 3] consists of situations where a defendant has posted information on a passive Internet website which is accessible to users in foreign jurisdictions and personal jurisdiction is improper.  *Id.*

The *Miller* Court held that the website at issue in that case was a passive, Level 3 website, and therefore that Florida did not have personal jurisdiction over the defendants. *Miller*, 289 F.Supp.2d at 1335-36. The *Miller* Court reached this conclusion even though the record indicated that TMC clearly solicited business over the website, and that the plaintiff initiated his contact from Florida through that website.

In the instant case, QWorldstar's operations are even more passive than the TMC website at issue in *Miller*, and as such, fall squarely into the Level 3 Category. Defendant QWorldstar operates a passive website which allows individuals to voluntarily submit videos for consideration to be posted on the website. O'Denat Aff. at ¶ 16. All of the acts complained of relate to the passive data posted on the website (in this case, the Video). There are no allegations that anyone from Florida was targeted or that Florida customers in particular were targeted. The Video is accessible to anyone viewing www.worldstarhiphop.com whether or not someone lives in Florida. Therefore, such conduct is insufficient to give rise to personal jurisdiction under Fla. Stat. § 48.193(1)(a)(2) or (6).

Of course, the Court may also, as other district courts have done, decide not to rely on *Zippo* as persuasive precedent. *Cf. Miller, supra*, and *Alternative Energy Corp. v. Redstone*, 328 F.Supp.2d 1379, 1382 (S.D. Fla. 2004) (citing Florida courts that have applied the *Zippo* analysis) *with Instabrook Corp. v. Instapublisher.com*, 469 F.Supp.2d 1120, 1125 (M.D. Fla. 2006) (holding that "website interactivity may have some bearing on the jurisdictional analysis, but it is not determinative.") This approach may be particularly relevant here, where there are no actual *transactions*, but instead, the website is merely a forum for users to share videos. O'Denat Aff. at ¶ 16.

In that QWorldstar (and O'Denat) have not committed any torts within or having an effect within the State of Florida, this Court lacks "tort-based" jurisdiction over the Defendants. *Miller*, 289 F.Supp.2d at 1333-34 (no tort-based jurisdiction over the defendants under Fla. Stat. §§ 48.193(1)(a)(2) or (6)).

## B. The Court Lacks Any Basis to Exercise General Jurisdiction Over Defendants Pursuant to Fla. Stat. § 48.193(2)

A court may exercise general jurisdiction over a foreign defendant under section 48.193(2) of the Florida long-arm statute only if the foreign defendant is engaged in "continuous

and systematic" and "extensive and pervasive" activity in Florida.  Fla Stat. § 48.193(2); *see generally Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984).

While it is unclear whether Plaintiffs are attempting to assert that the court may exercise general jurisdiction through the purported jurisdictional or venue allegations of the FAC, it is quite clear that Plaintiffs have not alleged and cannot present any facts that Defendants have engaged in systematic and continuous business activity in Florida.  *See* Sections II.A-B, *supra*, and *see generally* O'Denat Aff.  More specifically, Plaintiffs have not and cannot assert any facts that show that Defendants (1) are licensed or qualified to do business in Florida; (2) have an office or agency in Florida; (3) operate, conduct, engage in, or carry on a business or business venture in Florida; (4) have an office address or telephone number in Florida; (5) have appointed an agent for service in Florida; (6) pay taxes to the state of Florida; or (7) have a banking or other financial account in Florida.   Accordingly, this Court lacks any basis to exercise general jurisdiction over Defendants pursuant to Fla. Stat. § 48.193(2) because the Defendants, all of whom are non-residents, have not been engaged in "continuous and systematic" and "extensive and pervasive" activity in Florida as required by the statute.  *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 415-416.

### C.  Even If Jurisdiction Were Proper Under Florida's Long-Arm Statute, Asserting Jurisdiction Over Defendants Would Violate the Due Process Clause

"In addition to satisfying the Florida long-arm statute, a federal court sitting in diversity must [e]nsure that jurisdiction comports with the due process requirements of the Fourteenth Amendment."  *Meier v. Sun Int'l Hotels, Ltd*., 288 F.3d 1264, 1270 (11th Cir. 2002).  In essence, the Due Process Clause ensures that persons will have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign.  *Burger King*, 471 U.S. at 472.

> There are three considerations under the due process clause (1) purposeful availment of the forum state; (2) the cause of action arises out of the activities of which you purposefully availed yourself, i.e., the contacts must proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state; and (3) reasonable foreseeability that 'a defendant should reasonably anticipate being haled into court there.'

*Future Technology*, 218 F.3d 1247, 1250-51 (citing *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. at 297).

11

Here, the Due Process Clause mandates dismissal of this case.  To begin, none of the Defendants' business activities have any direct or purposeful connection to Florida.  *See* O'Denat Aff. at ¶¶ 8-10; 12-16.  While Plaintiffs may claim that Defendants intentionally aimed their conduct at Plaintiffs by defaming Plaintiffs in Florida or violating Plaintiffs' privacy in this state, the fact remains that Defendants and their agents did not create the Video.  There are no allegations that Defendants intentionally aimed any conduct at Defendants because of their status as Florida residents – or that Defendants even knew Plaintiffs were Florida residents.  Defendant QWorldstar merely operates the website upon which individuals post videos, while Defendant O'Denat is an employee of QWorldstar.  *See* O'Denat Aff. at ¶¶ 2, 16.  There are no allegations that O'Denat had any involvement in the posting of the video.  Even if the person who submitted the Video purposefully aimed it at Florida residents, including Plaintiffs, Defendants did not.

None of the causes of action allege any specific conduct aimed at creating any "connection" to Florida.  Rather, the allegations point to the content of a website – content which is the same whether it is viewed in Florida or any other place in the world.  *See Miller*, 289 F.Supp.2d at 1336 ("[P]lacing an informational website on the Internet does not amount to sufficient contacts with the forum.")

Finally, based on the broad reach of a website, QWorldstar cannot reasonably be characterized as anticipating that the content of a passive website could be the basis for it to be haled into court into each and every jurisdiction in which the website is viewed.  Neither would O'Denat, as an employee of QWorldstar, have such understanding.  This was precisely the issue reached by the Court in *Roblor Marketing Group, Inc. v. GPS Industries, Inc.*, 645 F.Supp.2d 1130 (S.D. Fla. 2009), where Judge Moreno held that the mere accessibility of a website in the chosen forum state was insufficient to confer jurisdiction.  The court made a detailed analysis of the *Zippo* factors and their relevance in the Eleventh Circuit in particular for websites that are passive or at least, do not involve commercial transactions in the forum, finding that jurisdiction would not comport with due process.  *Id.* at 1149-53.  That analysis is equally relevant here where there is no showing that Defendants engage in commercial transactions in this forum.  The Due Process Clause prevents this Court from exercising personal jurisdiction over the Defendants, and as such, the FAC must be dismissed.

## II.  THE COMPLAINT SHOULD ALSO BE DISMISSED FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)

Plaintiffs have brought the following counts: (1) publication of private facts; (2) invasion of privacy; (3) violation of Florida common law right of publicity; (4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; (6) violation of Fla. Stat. § 934.10; and (7) defamation.  To the extent that the Court finds that Plaintiffs have adequately pleaded jurisdictional facts, Defendants request that the Court consider their arguments that these claims are subject to dismissal under Fed. R. Civ. P. 12(b)(6).

Under Fed. R. Civ. P. 12(b)(6), "dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"  Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial, ¶ 9:187 (The Rutter Group 2010), citing *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). Both deficiencies are applicable to the case at bar.

### A.  McFadden's Defamation Count Fails as a Matter of Law Because McFadden Failed to Comply with Fla. Stat. § 770.01

Fla. Stat. § 770.01 provides, in relevant, part:

Before any civil action is brought for publication or broadcast, in a newspaper, periodical, or other medium, of a libel or slander, the plaintiff shall, at least five days before instituting such action, serve notice in writing on defendant, specifying the article or broadcast and the statements therein, which he alleges to be false or defamatory.

*See also Laney v. Knight-Ridder Newspapers, Inc.*, 532 F. Supp. 910 (S.D. Fla 1982).  The *Laney* Court stated that "Notice affords defendants the opportunity to issue a retraction or even to settle the overall conflict thereby mitigating damages or eliminating litigation altogether." *Id.* at 913. McFadden did not notify Defendants that they were filing a lawsuit for defamation.  Instead, McFadden's dash to the courthouse effectively denied Defendants any opportunity to explore the above opportunities.  Immediate notice might have allowed the parties to de-escalate their differences rather than expend the Court's and the parties' time and resources.  "Providing notice is a condition precedent to filing suit." *Canonico v. Callaway*, 26 So.3d 53, 54 (Fla. Dist. Ct. App. 2010).  Thus, the failure to comply with Fla. Stat. § 770.01 is fatal to McFadden's defamation count.

13

**B.     Counts I, II and VII Should Be Dismissed Because Plaintiffs Failed to Allege Constitutional Actual Malice**

**1.     Plaintiffs Qualify as Public Figures, Requiring a Showing of Actual Malice for Their Claims of Defamation and Invasion of Privacy**

In order to state a claim for defamation under Florida law, a plaintiff must plead the following elements: statement of fact; defamatory effect; falsity; identification of plaintiffs as the subject; publication to a third party; the requisite fault; and compensable damages. *Byrd v. Hustler Magazine, Inc*., 433 So.2d 593 (Fla. Dist. Ct. App. 1983). The level of fault that must be pled depends on whether the plaintiff is a **public figure**, in which case actual malice must be demonstrated, or a private figure, which requires merely negligence. *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 154–55 (1967); *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 345 (1974); *Miami Herald Publ'g Co. v. Ane*, 458 So.2d 239 (Fla. 1984).

For a plaintiff to qualify as a public figure subject to the actual malice standard in pleading defamation, one of two factors must be shown:

> (1) that the individual can be of such prominence that he or she is a public figure for all purposes. *Gertz*, 418 U.S. at 351 (individual achieves "'such pervasive fame or notoriety'" that s/he is a public figure "'for all purposes and in all contexts'"); or

> (2) that Plaintiff voluntarily injected himself into a particular public controversy, resulting in "limited public figure" status – i.e., a public figure for purposes of that limited range of issues. *Id.*

The allegations in the FAC clearly establish that McFadden is a public figure. Plaintiff McFadden alleges that "he is a well-known rapper, who has published music videos, recordings, and is a public persona," (FAC ¶¶ 12, 16) and a "notable and popular rapper" (FAC ¶ 24). Similar allegations have previously been found sufficient to establish public figure status under Florida law. *Bianco v. Palm Beach Newspapers*, 381 So.2d 371, 372 (Fla. Dist. Ct. App. 1980) (four corners of the complaint established plaintiff as a public figure where "complaint by its own language and attachments, puts the appellant very much in the public eye by describing him as a "civic minded and political figure.")

This standard also necessarily applies to claims for invasion of privacy. *See Concerned Citizens for Judicial Fairness, Inc. v. Yacucci*, 162 So.3d 68, 73 (Fla. Dist. Ct. App. 2014)("Invasion of privacy of a public figure is subject to the same First Amendment considerations as defamation"). Plaintiff Alimpic brings a claim for invasion of privacy (Count

5) along with Plaintiff McFadden.  Though Plaintiff Alimpic does not admit she is a public figure, she is a celebrity in her own right, maintaining various websites and social media for promotion of her career as an actress.  *See* **Exhibits 1, 2, and 5** to the Declaration of James Ryan In Support of Defendants' Request for Judicial Notice ("Ryan Decl."), attached as **Ex. B**.  As admittedly public figures involved in matters of public concern, Plaintiffs are required to plead actual malice.

### 2.   Plaintiffs Have Failed to Plead Facts Sufficient to Establish Actual Malice for Their Claims of Defamation and Invasion of Privacy

To meet their pleading burden, Plaintiffs must allege facts demonstrating that Defendants made a statement with a "high degree of awareness of [its] probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964); *Bishop v. Wometco Enters., Inc.*, 235 So.2d 759, 761 (Fla. Dist. Ct. App. 1970).  Plaintiffs must also establish that Defendants published the video "'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Sullivan*, 376 U.S. at 279-80; *see also St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (reckless disregard requires a showing that "the defendant in fact entertained serious doubts as to the truth of the publication"). The FAC is deficient in this regard, and therefore must be dismissed.

Other than two conclusory allegations – based on information and belief – that Defendants acted with "actual malice" (FAC ¶ 37, 47), the sole allegations in the FAC with respect to fault on the part of Defendants are that Defendants allegedly published a defamatory message saying "next time you steal from a girls purse make sure they don't have you on camera getting your ass ate."  FAC ¶ 78.  However, there are no factual allegations in the FAC that explain how Defendants had knowledge of falsity or acted with a reckless disregard for the truth. *Bianco*, 381 So.2d at 372-73 ("lone statement that the publication was "malicious" was "clearly insufficient" to establish actual malice).

Plaintiffs' limited, conclusory allegations are insufficient to state a cause of action for defamation of a public figure.  Hence, the allegations in the Complaint are wholly insufficient to demonstrate actual malice, and Counts I, II, and VII must be dismissed.

**B.**     **Plaintiffs' Publication of Private Facts Count (Count I) Is Also Barred Because the Posting of the Video and Any Comments about the Video Are Protected by the First Amendment**

The elements of publication of private facts in Florida are (1) the publication; (2) of private facts; (3) that are offensive; and (4) that are not of public concern.  *Cape Publications v. Hitchner*, 549 So.2d 1374 (Fla. 1989); *see also Tyne v. Time Warner Entertainment Co*., 204 F.Supp.2d 1338, 1344 (M.D. Fla. 2002).  Imposing liability against a media defendant has been severely restricted since the *Hitchner* decision.

The Supreme Court has long made clear that only "well-defined and narrowly limited classes of speech" fall outside the protection of the First Amendment, see *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942) (including obscenity, incitement, fighting words, threats), and, in recent terms, has repeatedly reaffirmed this categorical approach to defining unprotected speech, *see*, *e.g.*, *United States v. Stevens*, 559 U.S. 460, 468-69 (2010) ("These historic and traditional categories long familiar to the bar … are well-defined and narrowly limited classes of speech.") (citations omitted).  *See also id.* (finding unconstitutional punishment for animal crush videos because, "'[f]rom 1791 to the present' . . . the First Amendment has 'permitted restrictions on the content of speech in a few limited areas' and has never 'include[d] a freedom to disregard these traditional limitations'") (citation omitted); *Snyder v. Phelps*, 562 U.S. 443, 451 n.3 (2011) (unconstitutional to impose liability for picketing at soldier's funeral, including for invasion of privacy and intentional infliction of emotional distress because "there is 'no suggestion that the speech at issue falls within one of the categorical exclusions from First Amendment protection, such as those for obscenity or fighting words'") (citation omitted); *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 791 (2011) (violent video games sold to minors protected by First Amendment based on Supreme Court's repeated holdings "that new categories of unprotected speech may not be added to the list" based on conclusion that "certain speech is too harmful to be tolerated").

None of these historically limited classes is present here. Just as the Court declined to create new categories of unprotected speech for crush videos, violent video games, and – as is especially relevant for privacy and emotional distress claims – picketing a soldier's funeral, the Court has never embraced a wholesale exception for alleged invasions of privacy involving

sexual intercourse, for criminal statutes regulating dissemination of speech, or for speech alleged not to involve matters of public concern.

The Supreme Court has made clear that "privacy concerns give way when balanced against the interests" protected by the First Amendment. *Bartnicki v. Vopper*, 532 U.S. 514, 534 (2001). That's because "where matters of purely private significance are at issue, First Amendment protections are often less rigorous." *Snyder,* 562 U.S. at 452 (citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988)). On the other hand, "'[s]peech on 'matters of public concern' . . . is 'at the heart of the First Amendment's protection.'" *Id*. (quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc*., 472 U.S. 749, 758–59 (1985) (plurality opinion)).

> Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public. The arguably inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern.

*Id*. at 1216 (citations omitted) (internal quotation marks omitted).

Plaintiffs are public figures – by Plaintiff McFadden's own admission, he is a "well-known rapper" and Plaintiff Alimpic is a prodigious adult film star with dozens of credits. Plaintiffs have chosen to cultivate an image of sexual prowess and skill, as evidenced by the social media content and internet presence of both Plaintiffs. *See*, *e.g.*, **Exhs. 1-5** of Ryan Decl., attached as Ex. B.

Further, "the mere the fact that [a] publication concerns arguably inappropriate and otherwise sexually explicit content does not remove it from the realm of legitimate public interest." *Gawker Media, LLC v. Bollea*, 129 So.3d 1196, 1201 (Fla. Dist. Ct. App. 2014) (reversing temporary injunction against website defendant for video publication of sex tape; finding that plaintiff failed to meet heavy burden to overcome presumption that the temporary injunction was an unconstitutional prior restraint of speech under the First Amendment and that it was within media outlet's discretion to publish the tape). ("[P]rivacy concerns give way when balanced against the interest in publishing matters of public importance . . . One of the costs associated with participation in public affairs is an attendant loss of privacy.") Like Terry Bollea (Hulk Hogan) in *Gawker Media, LLC*, Plaintiff McFadden "exacerbated" the "public controversy" about the Video, making it obvious that the Video addresses matters of public

concern.  *See Gawker Media, LLC*, 129 So.3d at 1201; *see* Ex, 2 to Ryan Decl. (excerpts from Plaintiff McFadden's publicly available Twitter and Instagram feed from the day of the posting).

The Video was posted to QWorldstar's website and a short comment was made about it. *Gawker Media, LLC* highlighted a Central District of California case involving a sex tape on this very basis: where a defendant has not effected commercial distribution, publication and reporting **were not an invasion of privacy and was protected speech**.  *See Gawker Media, LLC*, 129 So.3d at 1202 (citing *Michaels II*, No. CV 98-0583 DDP (CWx), 1998 WL 882848 (C.D. Cal. Sept. 11, 1998) at *7, *10 (distinguishing the dissemination of an entire sex tape from the use of excerpts from the tape); and *Bollea v. Gawker Media, LLC*, 913 F.Supp.2d 1325, 1331 n. 6 (M.D.Fla. 2012) (*Bollea II*) ("[Gawker Media] did not simply post the entire [Sex Tape]—or substantial portions thereof, but rather posted a carefully edited excerpt consisting of less than two minutes of the thirty[-]minute video of which less than ten seconds depicted explicit sexual activity.")

**C.      Plaintiffs' Remaining Counts Should Also Be Dismissed Because They Are Duplicative Of One Another**

Plaintiffs' claims for (1) publication of private facts; (2) invasion of privacy; (3) violation of Florida common law right of publicity; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress (the "Duplicative Claims") are duplicative of one another.   "Florida courts have held that a single wrongful act gives rise to a single cause of action, and that the various injuries resulting from it are merely items of damage arising from the same wrong."  *See Easton v. Weir*, 167 So.2d 245, 247 (Fla. Dist. Ct. App. 1964). "A contrary result might very well enable plaintiffs in libel to circumvent the notice requirements of Fla. Stat. § 770.01 by the simple expedient of redescribing the libel action to fit a different category of intentional wrong." *Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So.2d 607, 609 (Fla. Dist. Ct. App. 1975).  Thus, if the sole cause of action for the invasion of privacy claim is the same defamatory publication that gives rise to the publication of private facts claim (i.e., the publication of the video), the invasion of privacy claim is precluded.  *See Fridovich v. Fridovich*, 598 So.2d 65, 70 (Fla. 1992); *Byrd v. Hustler Magazine, Inc.*, 433 So.2d 593, 594–95 (Fla. Dist. Ct. App. 1983) (false light claim rejected when based on same factual allegations as defamation claim). "This single publication/single action rule is designed to discourage the erosion of free speech safeguards by the simple expedient of looking to a substitute cause of action."  *Orlando*

*Stadium*, 316 So.2d at 609.  *See also Doe v. Univision Television Grp., Inc.*, 717 So. 2d 63, 65 (Fla. Dist. Ct. App. 1998) (dismissing negligent infliction of emotional distress claim where "[t]he source of the plaintiff's emotional distress was the disclosure of private facts, contrary to the ground rules under which the plaintiff agreed to be interviewed. It is not independently actionable under the heading of negligent infliction of emotional distress. [citation]").

> ### D.    Plaintiffs' Statutory Claim for Violation of Fla. Stat. § 934.10 (Count VI) Fails as a Matter of Law

Plaintiffs have brought a claim for violation of Fla. Stat. § 934.10, Florida's Wiretap Act, for Defendants' alleged disclosure to third persons of the Video.

To the extent that the alleged criminal act is the dissemination of the Video through the act of commenting on it, the Supreme Court made clear in *Bartnicki* that such conduct may not be punished.  Thus, where, as here, the "'publisher of information has obtained the information in question in a manner lawful in itself, but from a source who has [recorded] it unlawfully,'" that "stranger's illegal conduct does not suffice to remove the First Amendment shield from speech about a matter of public concern." 532 U.S. at 528, 535 (citation omitted). Any claimed "right of privacy" in such circumstances cannot constitutionally "'prohibit any publication of matter which is of public or general interest.'"  *Id*. at 534 (citation omitted).  Indeed, *Bartnicki* is the latest in a series of Supreme Court decisions finding it unconstitutional under the First Amendment to sanction the retransmission of information that was lawfully obtained by the media – even if someone else violated a statute or court order in obtaining the information initially.  *See*, *e.g.*, *Florida Star v. B.J.F.*, 491 U.S. 524, 541 (1989) (no liability for publication of identity of rape victim when such information was obtained from police report released by law enforcement agency in violation of Florida statute); *Smith v. Daily Mail Publ'g Co.,* 443 U.S. 97, 103-04 (1979) (invalidating West Virginia statute prohibiting publication of identity of juvenile defendant without first obtaining court order; reiterating that a state cannot restrain a person from reporting information that he did nothing unlawful in obtaining); *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 496 (1975) (invalidating Georgia law restricting publication of rape victim's name because defendant had obtained information lawfully despite statute's prohibition against its release).

There are no allegations that the video was illegally obtained by Defendants. Accordingly, the claim fails as a matter of law.

## III.    CONCLUSION

WHEREFORE, specially appearing Defendants request this Court enter an Order dismissing the First Amended Complaint with prejudice and entering judgment in Defendants' favor.

Respectfully submitted on September 29, 2016.

_Thomas A. Tucker Ronzetti_
Thomas A. Tucker Ronzetti, Esq.
(Florida Bar No. 965723)
Tal J. Lifshitz, Esq.
(Florida Bar No. 99519)
**KOZYAK TROPIN & THROCKMORTON, LLP**
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Phone:  (305) 372-1800
Facsimile:  (305) 372-3508
Email:  TR@kttlaw.com
Email: TJL@kttlaw.com

Douglas L. Johnson – Admitted _Pro Hac Vice_
(California Bar No. 209216)
James T. Ryan – Admitted _Pro Hac Vice_
(California Bar No. 210515)
**JOHNSON & JOHNSON LLP**
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Phone:  (310) 975-1080
Facsimile:  (310) 975-1095
Email:  djohnson@jjllplaw.com
          jryan@jjllplaw.com

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on Thursday, September 29, 2016, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By: *Thomas A. Tucker Ronzetti*

Thomas A. Tucker Ronzetti, Esq.